PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| E.V., *et al.*, | ) |
|     Petitioners-Plaintiffs, | ) CASE NO. 4:25-cv-2069 |
| | ) |
|           v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| KEVIN RAYCRAFT, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION** |
|     Respondents-Defendants.[1] | ) **AND OPINION** |
| | ) [Resolving ECF Nos. 8, 9, and 12] |
| | ) |

      Pending before the Court is Petitioners' Motion for Temporary Restraining Order and/or Stay of Removal.  ECF No. 8.  Also pending before the Court is Petitioners' Motion to Show Cause.  ECF No. 9.  Respondents submitted their Opposition to Petitioners' Motion for TRO, Motion to Dismiss, and Return of Writ.  ECF No. 12.  The Court conducted a telephonic hearing, during which, the parties' counsel presented oral argument regarding their respective positions.  The Court, being duly advised, grants Petitioners' Motion for Temporary Restraining Order (ECF No. 9) for the reasons stated herein.  Respondents' Motion to Dismiss (ECF No. 12) is denied.  Petitioners' Motion to Show Case (ECF No. 9) is denied as moot.[2]

---

    [1] Although the parties are labeled Petitioners-Plaintiffs and Respondents-Defendants, the Court will refer to the parties a Petitioners and Respondents.

    [2] Because the Court granted Petitioners' Motion to Proceed Under Pseudonyms (ECF No. 6) during the telephonic hearing, initials are used to reference Petitioners.  Mins. of Procs. [non-document], Telephonic Hr'g 10/14/2025 (granting ECF No. 6).

(4:25CV2069)

## I. BACKGROUND

### A. Statutory and Regulatory Framework for Removal

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") establishes two mechanisms by which a noncitizen may be subject to removal proceedings. *See* IIRAIRA, Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996). The first, commonly referred to as "Section 240" or "Section 1229a" proceedings,[3] is the standard mechanism for removing noncitizens who are found inadmissible. *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2675785, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Coalition for Humane Immigrant Rights v. Noem*, No. 1:25-cv-00872-JMC, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) *appeal pending* 25-5289 (D.C. Cir. Aug. 11, 2025)).[4] Section 240 proceedings occur before an immigration judge ("IJ"), who is a Department of Justice employee and licensed attorney and who is responsible for developing the record in immigration cases before them. *Id*. (citing 8 U.S.C. § 1229a(a)(1), (b)(1)). During the Section 240 proceedings, noncitizens have the right to retain counsel, examine and present evidence, and cross-examine witnesses. *Coalition*, 2025 WL 2192986, at *3 (citing 8 U.S.C. § 1229a(b)(4)). Hearings are recorded and transcripts are made available for appeals before the Board of Immigration Appeals ("BIA"). Section 240 hearings

---

[3] Section 240 of IIRIRA, which sets forth the procedures for standard removal, was later codified in 8 U.S.C. § 1229a.

[4] Respondents argue that the D.C. District Court's stay issued in *Coalition* was stayed by the D.C. Circuit Court pending appeal, therefore allowing Respondents to continue processing noncitizen parolees through the expedited removal process. ECF No. 12 at PageID ##: 226, 297 (Ex. M). Respondents are mistaken, as the D.C. Circuit's order concluded the opposite and found the Government had not "satisfied the stringent requirements for a stay pending appeal." ECF No. 12-13.

2

(4:25CV2069)

take place over multiple hearings and are subject to judicial review by a United States court of appeals. *Id*. (citing 8 U.S.C. § 1252).

In contrast, the second mechanism, expedited removal proceedings, is a "streamlined" removal process that "lives up to its name." *Make the Road New York v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020). During the expedited removal proceedings, an immigration officer, not an IJ, asks a series of questions to determine the individual's identity, alienage, and inadmissibility. 8 C.F.R. § 235.3(b)(2)(i). Noncitizens are also asked whether they intend to seek asylum, have a fear of persecution or torture, or have a fear of returning to their country of origin, also referred to as a credible fear interview. 8 C.F.R. § 235.3(b)(4). The credible fear determination is reviewed by an IJ within three days and is the only part of the expedited removal process subject to review. *Make the Road*, 962 F.3d at 619. If the immigration officer determines the noncitizen is inadmissible and makes a negative credible fear determination, the immigration officer issues a Notice and Order of Expedited Removal. 8 C.F.R. § 235.3(b)(2)(i); *Make the Road New York v. Noem*, 25-cv-190, 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025). Once a supervising officer signs off on the determination, the noncitizen is ordered removed. *Make the Road*, 2025 WL 2494908 at *3. Expedited removal proceedings do not include the right of appeal to an IJ, the BIA, or (aside from two narrow exceptions) a judicial court.[5] *Id*. Such proceedings can conclude in a matter of days. *Id*.

---

[5] First, noncitizens may file a habeas petition challenging expedited removal proceedings, though such claims are limited to ascertaining whether the petitioner: (a) is an alien; (b) ordered removed under the expedited removal procedures; and (c) can prove that they were lawfully admitted or granted asylum. 8 U.S.C. § 1252(e)(2). Second, noncitizens may challenge expedited removal determinations and the implementation of the removal statute, before the United States District Court for the District of Columbia. 8 U.S.C. § 1252(e)(3).

3

(4:25CV2069)

Noncitizens are eligible for expedited removal if they are: (1) "arriving in the United States," that is, appearing at a port of entry; or (2) have "not been admitted or paroled into the United States" and they cannot affirmatively show that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Espinoza*, 2025 WL 2675785 at *5 (citing *Coalition*, 2025 WL 2192986 at *5); *Pedro Yimi Cardin Alvarez v. David Rivas*, No. CV 25-02943-PHX-GMS, 2025 WL 2898389, at * 12 (D. Ariz. Oct. 7, 2025).  The IIRIRA authorizes the Attorney General (who has since delegated such authority to the Department of Homeland Security ("DHS") Secretary) to designate the population of noncitizens within the second category who are subject to expedited removal.  *Make the Road*, 2025 WL 2494908 at *4 (citing 8 U.S.C. § 1225(b)(A)(iii)(I)).

Prior to 2025, DHS had made two designations in addition to "arriving aliens": (1) noncitizens arriving by sea within the last two years (Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg 68924, 68924 (Nov. 13, 2002)); and (2) noncitizens apprehended within 100 miles of an international border and 14 days of entry.  Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48877 (Aug. 11, 2004).  In January 2025, DHS asserted the authority to apply expedited removal proceedings to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but less than two years" ("2025 Designation").  *Make the Road*, 2025 WL 2494908 at *5 (citing Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025)).  In short, DHS began applying

4

(4:25CV2069)

expedited removal proceedings to parolees, arguing that parolees are, for all intents and purposes, "arriving aliens." *Id.* at *4-5.

> Regarding parole for noncitizens, the DHS Secretary has statutory authority to
>
> parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A); *see* 8 C.F.R. § 212.5. In 2022 and 2023, DHS established four humanitarian parole programs for nationals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV Parole Program"). *See* Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507 (Oct. 19, 2022); Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266 (Jan. 9, 2023); Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243 (Jan. 9, 2023); Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255 (Jan. 9, 2023). Qualified noncitizens granted parole—which could last up to two years—are able to apply for employment authorization. *See, e.g.,* Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507 (Oct. 19, 2022). In March 25, 2025, DHS announced it was terminating the CHNV Parole Program. Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025).

### B. Expedited Removal Challenges by Parolees

There have been numerous challenges to DHS's decisions eliminating the CHNV Parole Program and applying expedited removal proceedings to noncitizens who are (or were) paroled under such programs. *See, e.g., Coalition*, 2025 WL 2192986; *Make the Road*, 2025 WL 2494908; *Pedro Yimi Cardin Alvarez*, 2025 WL 2898389 (D. Ariz. Oct. 7, 2025); *Munoz*

5

(4:25CV2069)

*Materano v. Arteta*, No. 25 CIV. 6137, 2025 WL 2630826 (S.D.N.Y. Sept. 9, 2025); *Espinoza*, 2025 WL 2675785 (E.D. Cal. Sept. 18, 2025); *Sanchez Ballestros v. Noem*, No. 3:25-cv-594-RGJ, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025).

In *Coalition*, the D.C. District Court held that DHS's regulatory definition of "arriving alien" was *ultra vires* to the extent it subjected parolees to expedited removal proceedings. 2025 WL 2192986 at *25. After conducting a thorough analysis of 8 U.S.C. § 1225(b)(1)(A)(iii), 8 C.F.R. § 235.3(b)(1), the agency's relevant directives, and authoritative case law, the court determined that the statute "forbids the expedited removal of noncitizens who have been, *at any time*, paroled into the United States. 2025 WL 2192986, at *39 (emphasis added). Specifically, the court rejected the Government's argument that, pursuant to agency guidance, noncitizens paroled into the United States were in the same legal position as noncitizens standing at the border, regardless of the duration of their parole. *Id*. at *27. Rather, the court looked to the plain meaning of the term "arrive" and determined that it "would not naturally be read to refer to someone who previously reached . . . a port of entry, underwent inspection . . . and then was paroled . . . for an indefinite period of time." *Id*. at *28.

The *Coalition* court further concluded that the regulatory definition of "arriving alien" conflicted with the statutory and regulatory schemes. *Id*. at 29. The court explained "the only way to make sense of the statutory scheme Congress created is to see that parolees fall under neither [provision of Section 1225(b)(1)]. Any other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's words." *Id*. at *30.

In *Make the Road*, the D.C. District Court addressed the plaintiffs' due process claims concerning the 2025 Designation and implementing guidance, specifically, the lawfulness of

6

(4:25CV2069)

applying expedited removal proceedings to individuals detained more than 100 miles from the border and who have been present in the United States for at least 14 days but less than two years. 2025 WL 2494908 at *7-8. First addressing jurisdiction, the court rejected the Government's argument that 8 U.S.C. § 1252(f)(1) barred injunctive relief, citing to its analysis of the same argument in *Coalition*, wherein the court determined § 1252(f)(1) did not disturb the court's jurisdiction to issue a stay or vacatur under section 706 of the Administrative Procedure Act. *Id*. (citing *Coalition*, 2025 WL 2192986, at *13). Next, the court held that noncitizens paroled in the United States had a constitutional liberty interest in remaining and that expedited removal proceedings did not provide sufficient due process to protect those liberty interests. *Id. at *10-12*.

The Court is persuaded and joins the numerous district courts that hold § 1225 does not authorize expedited removal of noncitizens who have been paroled into the United States under either § 1225(b)(1)(A)(i) (arriving aliens) or § 1225(b)(1)(A)(iii)(II) (individuals not admitted or paroled into the United States and who have not been continuously present for at least two years, regardless of the status of that parole). See *Coalition*, 2024 WL 2192986 at *30; *Munoz Materano,* 2025 WL 2630826 at * 11; *Espinoza,* 2025 WL 2675785, at *5; *Pedro Yimi Cardin Alvarez,* 2025 WL 2898389 at *13.

### C. Factual Background

The case at bar involves the Immigration and Customs Enforcement's ("ICE") arrest and detention of two Haitian women who lawfully entered the United States through the Haitian Humanitarian Parole program.[6] ECF No. 1 at PageID#: 2, ¶¶ 1-3; ECF No. 8 at PageID#: 172.

---

[6] During the telephonic hearing, Petitioners' counsel informed the Court that both Petitioners were granted parole status under this program in advance of arriving at a port

7

(4:25CV2069)

Both Petitioners E.V. and M.F.E. claim they fled violence and persecution in Haiti, availing themselves to the procedures then set forth in the Haitian Humanitarian Parole program. ECF No. 8 at PageID#: 172.

Petitioner E.V. claims to have narrowly escaped an attempted kidnapping by armed members of the Viv Ansanm, an organized crime syndicate in Port-au-Prince, Haiti. ECF No. 8 at PageID#: 176. Her husband has been politically active in Haiti since the 1990s, campaigned for Port-au-Prince mayor, and founded multiple organizations advocating for social change and challenging Viv Ansanm. ECF No. 8 at PageID#: 176. E.V. arrived in Fort Lauderdale, Florida on July 16, 2024 and provided U.S. Customs and Board Protection ("CBP") with a copy of her I-94 form documenting her lawful entry under the Haitian Humanitarian Parole program with an "admit until" date of June 12, 2025. ECF No. 8 at PageID#: 176. E.V. suffers from a serious and painful umbilical hernia. ECF No. ECF No. 8 at PageID#: 174.

Similarly, Petitioner M.F.E. fled Haiti after experiencing violent attacks by armed bandits who robbed her at gunpoint. ECF No. 8 at PageID#: 177. M.F.E. claims that if she returns to Haiti, she fears the armed bandits will kill her, citing to reports of criminal actors shooting people without provocation and robbing victims. ECF No. 8 at PageID#: 178. M.F.E. arrived at a U.S. port of entry on May 12, 2024 with her I-94 form documenting her lawful entry under the Haitian Humanitarian Parole program with an "admit until" date of June 12, 2025. ECF No. 8 at PageID#: 178. M.F.E. is 70 years old with poor eyesight and has not been provided reading

---

of entry in 2024. *See Coalition*, 2024 WL 2192986 at *8 ("Each notice created a process under which noncitizens, along with a U.S.-based supporter, could apply in advance to travel to a U.S. port of entry."). As noted above, the Haitian Humanitarian Parole program was eliminated by DHS in March 2025, well after Petitioners had been granted parole and arrived at a port of entry. *See* Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025).

8

(4:25CV2069)

glasses to review legal documents provided by her attorney or immigration officials. ECF No. 8 at PageID#: 174.

Recently, on July 29, 2025, E.V. and M.F.E. were driving through Ohio when their vehicle broke down. Shortly thereafter, ICE agents arrested the women and detained them in the Mahoning County Jail. ECF No. 1 at PageID #: 2, ⁋ 3. Both Petitioners were notified that they were being placed in expedited removal proceedings, rather than the Section 240 regular removal proceedings. ECF No. 8 at PageID#: 172.

On August 18, 2025, E.V. underwent a credible fear interview with an immigration officer, who made a negative determination on August 29, 2025. ECF No. 8 at PageID#: 176. An IJ reviewed and affirmed the immigration officer's negative determination. ECF No. 8 at PageID#: 176. E.V. moved to reopen her credible fear proceedings on September 17, 2025, asserting that she was afraid to speak up during her interview. ECF No. 8 at PageID#: 176-77. The IJ denied the motion for lack of jurisdiction. ECF No. 8 at PageID#: 177.

M.F.E. underwent a credible fear interview on September 5, 2025, which also resulted in a negative determination. ECF No. 8 at PageID#: 178. She requested review by an IJ, who affirmed the negative determination on October 2, 2025. ECF No. 12-12. Her attorney was first notified of the IJ's decision during the telephonic hearing for the pending motion, conducted on October 14, 2025.

## II. STANDARD OF REVIEW

Four factors are important in determining whether a temporary restraining order is appropriate: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be

(4:25CV2069)

served by issuance of the injunction. *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp.2d 682, 687 (N.D. Ohio 2002) (O'Malley, J.); *see also Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (Gwin, J.) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)). *See Coalition*, 2024 WL 2192986 at *12 ("The factors governing issuance of a section 705 stay are the same as those that govern the grant of a preliminary injunction.").

The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). No single factor is determinative except that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). "The burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one: '[t]he party seeking the injunction must establish its case by clear and convincing evidence.'" *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio March 13, 2015) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)); *Honeywell, Inc. v. Brewer-Garrett Co.*, No. 97-3673, 1998 WL 152951, at *3 (6th Cir. March 23,1998)).

(4:25CV2069)

### III. DISCUSSION

#### A. Petitioners' Likelihood of Success on the Merits

##### 1. *The Court Retains Jurisdiction to Review Petitioners' Challenge to the Government's Implementation of Expedited Removal Proceedings.*

The Government first argues the Court lacks jurisdiction because the Immigration and Nationality Act ("INA") abrogates judicial review of expedited removal orders. ECF No. 12 at PageID #: 223; *see* 8 U.S.C. § 1252(a)(2)(A). To be sure, the INA bars most judicial review unless a petitioner's claim falls under the two exceptions in 8 U.S.C. § 1252(e). First, a petitioner can seek narrow habeas relief in federal court challenging expedited removal. *Id.* The reviewing court, however, is limited to determining whether that petitioner: (a) is an noncitizen; (b) was ordered removed under expedited removal provisions; and (c) can prove they were lawfully admitted or granted asylum. *Id.* Second, noncitizens can challenge expedited removal determinations and implementation of the expedited removal statute—but only in the United States District Court for the District of Columbia. *Id.*

It is uncontested that enjoining the Government from executing a valid order of removal is insulated from the Court's review. *See* 8 U.S.C. § 1252(g); *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Rranxburgaj v. Wolf*, 825 Fed. Appx. 278, 283 (6th Cir. 2020). That, however, is not the issue here. Petitioners challenge the Government's as applied *implementation* of expedited removal under the INA, rather than its wholesale constitutionality. ECF No. 8 at PageID # 171. Consequently, 8 U.S.C. § 1252 does not strip the Court's power to review Petitioners' narrow claims or grant their desired relief. *See Munoz Materano*, 2025 WL 2630826, at *10; *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025) (holding that § 1252(e)(3) cannot bar jurisdiction when the petitioner argued the Government did not have the lawful authority to initiate the expedited removal

11

(4:25CV2069)

process against him at that time, rather than arguing the constitutionality of expedited removal generally). Furthermore, the Court has jurisdiction *via* 28 U.S.C. § 1331 to review agency action—including DHS action—under the Administrative Procedure Act. *See Jama v. Dep't of Homeland Security*, 760 F.3d 490, 494 (6th Cir. 2014). Accordingly, the Court finds it has jurisdiction to assess Petitioners' *as applied* challenge to the Government's implementation of expedited removal.

### 2. The Court has Jurisdiction to Review Petitioners' Detention-Based Claims Independent of their Removal Proceedings.

There are two traditional requirements for a federal court to entertain a habeas petition: (1) it must be filed in the district of confinement; and (2) it must name the petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004); *see also* 28 U.S.C. § 2242. In petitions challenging physical detention, "jurisdiction lies in only . . . the district of confinement." *Padilla*, 542 U.S. at 443. Petitioners were detained in Ohio and remain incarcerated therein at the Mahoning County Jail. ECF No. 1 at PageID #: 2. The petition names the Government officials holding Petitioners in federal custody. ECF No. 1 at PageID #: 1. Therefore, the traditional requirements are satisfied, and the Court has—at first blush—power to review this petition. *See Ozturk v. Hyde*, 136 F.4th 382, 391 (2d Cir. 2025).

First, the Government contends that because the INA strips district courts of jurisdiction over removal proceedings, the Court is powerless to order Petitioners' release. This argument overstates the statute's reach. *See Mahdawi v. Trump*, 136 F.4th 443, 450 (2d Cir. 2025). Habeas petitions construe jurisdiction "in the sense that it is used in the habeas statute . . . not in the sense of subject-matter jurisdiction of the District Court." *Padilla*, 542 U.S. at 434 n.7; *see* 28 U.S.C. § 2241(a). Canons of statutory interpretation require Congress to speak clearly and unambiguously when it wants to deprive jurisdiction. *See Hyde*, 136 F.4th at 394; *Kucana v.*

12

(4:25CV2069)

*Holder*, 558 U.S. 233, 237 (2010) (noting that federal courts should "take account . . . of the presumption favoring interpretations of statutes to allow judicial review . . . absent clear statement."); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483–84 (1991) ("We hold that given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief, the District Court had jurisdiction"). Congress has not spoken so clearly here as to limit the Court's ability to review the independent legality of Petitioners' detention.

Second, the INA's bar on jurisdiction is narrow and applies to just three discrete governmental actions: (1) commencing removal proceedings; (2) adjudicating removal cases; and (3) executing removal orders. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). It does not constitute a jurisdictional bar "where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020). Nor does it abrogate jurisdiction over deportation proceedings at scale, especially claims "independent of, or wholly collateral to, the removal process." *Hyde*, 136 F.4th at 397 (quoting *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023)); *see Regents of the Univ. of California*, 591 U.S. at 19.

Third, the Sixth Circuit distinguishes challenges to noncitizen removal from challenges to noncitizen detention. *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (A "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims.") Thus, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of [their] order of removal," jurisdiction is not precluded by 8 U.S.C. § 1252(g). *Napolitano*, 600 F.3d at 605; *see* 8 U.S.C. § 1252(g). Despite substantial

13

(4:25CV2069)

overlap, Petitioners' detention claims are not inextricable from their removal proceedings.  *See Mahdawi*, 136 F.4th at 452.  Section 1252(g) "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention."  *Kong*, 62 F.4th at 609; *see also Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999).  Consequently, holding a challenge to *detention* as inherently implicating a challenge to *removal* would lead to "absurd" results.  *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.)

In line with this guidance, the Court finds its jurisdiction over Petitioners' detention-based claims exists independent from Petitioners' removal-based claims.  *See Zhen v. Doe*, No. 3:25-CV-01507-PAB, 2025 WL 2258586, at *3 (N.D. Ohio Aug. 7, 2025) (citing *Karki v. Jones*, No. 1:25-CV-281, 2025 WL 1638070 (S.D. Ohio June 9, 2025); s*ee* 28 U.S.C. § 2241 (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Those claims are therefore resolvable without obstructing the Government's undisputed right of removal.  By the same stroke, the likelihood of habeas merits success is ripe for independent assessment to determine whether an administrative stay is appropriate.  The Court finds that Petitioners are sufficiently likely to succeed on their *habeas* petition to warrant a stay on the removal proceedings pending merits review.  *See Higuchi Int'l. Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024).

### 3. *Petitioners are Likely to Succeed on the Merits of Their Habeas Detention Claims.*

Litigants desiring a stay on removal proceedings must establish, *inter alia*, a likelihood to succeed on the merits.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).  In Count II, Petitioners allege their detention violates their Fifth Amendment right to Due Process.  ECF No. 1 at PageID #: 16–17.  They ask the Court to issue a

14

(4:25CV2069)

writ of *habeas corpus* ordering Respondents to release them from custody or grant them bond hearings. ECF No. 1 at PageID #: 17. Respondents urge the Court to deny the petition for want of jurisdiction and failure to state a claim. ECF No. 12 at PageID #: 213.

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to all persons in the United States, citizen and noncitizen alike. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Petitioners are in federal custody; therefore, the Court must determine whether they are likely to succeed in arguing that their detention violates Due Process. To determine whether civil detention violates due process, federal courts apply a three-part balancing test—set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976)—that weighs:

> (1) the private interest that will be affected by the official action;
>
> (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Without determining the merits of their Due Process claim, the Court finds that: (1) Petitioners likely have a significant Due Process interest that will be affected by governmental action; (2) the risk of erroneous deprivation of that interest is likely high given the velocity of expedited removal proceedings; and (3) that interest likely outweighs the burden on the Government.

First, the Government argues that Petitioners' detention complies with Due Process because the INA mandates that noncitizens subject to expedited removal "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." ECF No. 12 at PageID #: 229; 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see*

15

(4:25CV2069)

*Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). That argument's underlying logic is circular and wanting. Undoubtedly, mandatory detention correlative to expedited removal does not violate Due Process. ECF No. 12 at PageID #: 229; *see Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). The Government, however, offers only a single legal basis for continued detention: Petitioners' designations for expedited removal. Consequently, a challenge to that designation is a challenge to the underlying detention. If the Court finds the Government acted *ultra vires* in designating Petitioners for expedited removal, its only justification for mandatory detention evaporates. In *Jennings*, noncitizens challenged "the extent of the Government's detention authority under the statutory framework [of the INA] as a whole." 583 U.S. 281, 283 (2018). Therein, the Supreme Court held "the extent of the Government's detention authority is not a matter of discretionary judgment, action, or decision," and, therefore, not wholly subject to the Government's "discretion to detain" *vis-a-vis* expedited removal. *Id.* Because the justification for detention is unsettled, the detention itself is unsettled.

Second, Petitioners' allegation that the Government is violating a stay on administrative proceedings regarding expedited removal from the District of Columbia is, at minimum, sufficiently colorable to challenge the sole justification for continued detention. *See Coalition for Humane Immigrant Rights v. Noem*, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) (granting a stay "to the extent the Challenged Actions subject to expedited removal individuals who have been, at any time, paroled into the United States at a point of entry.") If the Government acted *ultra vires* in shifting Petitioners from parolee-status to expedited removal-status, Petitioners are likely to succeed in arguing their continued detention violates Due Process.

No person shall be removed from the United States without due process of law. *A. A. R. P.*, 605 U.S. at 95. Those who have entered our borders have a liberty interest in remaining, no

(4:25CV2069)

matter how they entered. *See Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (noncitizens who enter the country illegally cannot be deprived of liberty without due process); *A.A.R.P.*, 605 U.S. at 94–95 (the Fifth Amendment applies to noncitizens in the context of removal proceedings); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same). Petitioners are likely to succeed on the merits of their *habeas* petition. Accordingly, a stay on proceedings is warranted to determine (a) the procedural propriety of Petitioners' designation and (b) the correlated constitutionality of their detention.

### B. Petitioners Will Suffer Irreparable Harm.

In addition to showing a likelihood of success on the merits, Petitioners must also establish that they face irreparable harm absent the requested relief. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Notably, Respondents makes no argument contesting irreparable harm. Nevertheless, the Court assesses whether Petitioners have alleged sufficient facts demonstrating they will suffer irreparable harm. As explained below, Petitioners have met their burden.

Irreparable harm must be "actual and imminent" rather than "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Although irreparable harm is balanced against the other factors, there must be some irreparable harm to issue a TRO or injunction. *Prieto Rejunjol v. Adducci*, 461 F. Supp. 3d. 675, 709 (6th Cir. 2020). "[W]here irreparable harm is based upon a violation of a plaintiff's constitutional rights, that violation, no matter how temporary, is sufficient to show irreparable harm." *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) (citing *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F. Supp. 3d. 948, 960 (S.D. Ohio 2015)).

Petitioners in this case have satisfied their burden to show irreparable harm for two main reasons. First, Petitioners have advanced a constitutional due process claim, alleging that they

17

(4:25CV2069)

were unlawfully subjected to expedited removal proceedings which does not provide sufficient procedural safeguards to prevent mistaken or unjustified deprivation of liberty.  *See Make the Road*, 2025 WL 2494908 at * 14-15.  Because Petitioners' allege constitutional violations, the irreparable harm factor is satisfied.  *See Hartman*, 316 F. Supp. 3d at 1025.

Petitioners also argue they are facing imminent deportation, and both claim that their return to Haiti could subject them to violence and persecution.  ECF No. 8 at PageID #: 185.  E.V. alleges that she narrowly escaped an attempted kidnapping by organized crime and that her family associations increase her risk of harm if she returns to Haiti.  ECF No. 8 at PageID #: 185.  M.F.E. reports that she was robbed at gunpoint and fears that if she returns, she will be subject to arbitrary shootings carried out by violent criminal groups in the area.  ECF No. 8 at PageID #: 185.  In E.V.'s motion to reopen her credible fear proceedings, she included news articles detailing the rise in gang violence in the country and the Haitian government's lack of control over such groups.  ECF No. 12-6.

Returning individuals to a place where they will be persecuted or tortured constitutes irreparable harm.[7]  *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733-34 (D.C. Cir. 2022).  Accordingly, Petitioners satisfy the irreparable harm factor.

### C. The Balance of Equities Factor

In cases advancing constitutional claims, "an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because 'the public interest is promoted by

---

[7] Although both Petitioners participated in a credible fear interview, (*see* ECF No. 8) it is questionable whether such an inquiry conducted under the expedited removal procedures was sufficient to satisfy the constitutional due process requirements.  *Make the Road*, 2025 WL 2494908 at *15 ("Entrusting the entirety of [the credible fear] decision making process to the executive branch official prosecuting the case leads, unsurprisingly to problems.").

(4:25CV2069)

the robust enforcement of constitutional rights.'" *Prieto Rejunjol*, 461 F. Supp. 3d at 710 (quoting *Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013)). *See Salazar v. Kaiser*, No. 1:25-cv-1017, 2025 WL 2456232, at *11 (E.D. Cal. Aug. 26, 2025) (merging the final two factors when the government is the opposing party). Moreover, "the public has an interest in preventing noncitizens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Make the Road*, 2025 WL 2494908 at *21 (citing *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 222 (D.D.C. 2020)). The Sixth Circuit holds that "the public interest lies in the correct application of the federal constitutional and statutory provisions upon which the claimants have brought [their] claim." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (cleaned up). Stated another way, there is no public interest in perpetuating unlawful agency action. *See League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

As articulated above, the Court joins with the *Coalition* decision in holding that paroled noncitizens cannot be subject to expedited removal proceedings under 8 U.S.C. § 1225 and that by applying such proceedings to Petitioners, DHS has acted *ultra vires* of its statutory and regulatory authority. *Supra* Section I.B. Accordingly, the balance of the equities and the public interest favor a Petitioners' motion for a temporary restraining order.

## IV. CONCLUSION

Petitioners' Motion for Temporary Restraining Order and/or Stay of Removal (ECF No. 8) is granted. Respondents' Motion to Dismiss (ECF No. 12) is denied. Petitioners' Motion to Show Cause (ECF No. 9) is denied as moot. Respondents are hereby:

1. Enjoined from removing Petitioners from the jurisdiction of the Northern District of Ohio pending further order of the Court;

19

(4:25CV2069)

2. Ordered to process Petitioners' under regular removal proceedings under [8 U.S.C. § 1229a](), not expedited removal proceedings, pending the conclusion of these review proceedings;

3. Ordered to provide E.V. with immediate medical evaluation and treatment for her umbilical hernia; and

4. Ordered to immediately provide M.F.E. with the glasses she possessed when she was seized or, in the alternative, with an eye examination and appropriate eyeglasses.

IT IS SO ORDERED.

| | |
|---|---|
| October 16, 2025 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |