PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


E.V., *et al.*,                                )
                                               )    CASE NO.  4:25-cv-2069
            Petitioners-Plaintiffs,            )
                                               )
            v.                                 )    JUDGE BENITA Y. PEARSON
                                               )
KEVIN RAYCRAFT, *et al.*,                      )
                                               )    **MEMORANDUM OF OPINION**
            Respondents-Defendants.            )    **AND ORDER**
                                               )    [Resolving ECF No. 8]


Having granted Petitioners-Plaintiffs'[1] Motion for a Temporary Restraining Order

("TRO") (ECF No. 15; ECF No. 16), the Court now addresses Petitioners' Motion for

Preliminary Injunction (ECF No. 8).  The Motion has been fully briefed.  ECF No. 20; ECF No.

23.  Being duly advised, having reviewed the parties' briefs and the applicable law, the Court

grants Petitioners' Motion for Preliminary Injunction (ECF No. 8).  The Court also grants in part

the petition for habeas relief under 28 U.S.C. § 2241.  ECF No. 1.

## I.    BACKGROUND

### A.  Factual Background

This case involves the Immigration and Customs Enforcement's ("ICE") arrest and

detention of two Haitian women who lawfully entered the United States through the Haitian

---

[1] Although the parties are labeled Petitioners-Plaintiffs and Respondents-Defendants, for ease of reference, the Court will refer to the parties a Petitioners and Respondents.

(4:25CV2069)

Humanitarian Parole ("HHP") program.[2]  ECF No. 1 at PageID#: 2, ¶¶ 1–3  ; ECF No. 8 at PageID#: 172.  Both Petitioners E.V. and M.F.E. claim they fled violence and persecution in Haiti, availing themselves to the procedures then set forth in the HHP program.  ECF No. 8 at PageID#: 172.

Before leaving Haiti or entering the United States, Petitioner E.V. claims to have narrowly escaped an attempted kidnapping by armed members of the Viv Ansanm, an organized crime syndicate in Port-au-Prince, Haiti.  ECF No. 8 at PageID#: 176.  Her husband has been politically active in Haiti since the 1990s, campaigned for Port-au-Prince mayor, and founded multiple organizations advocating for social change.  ECF No. 8 at PageID#: 176.  E.V. arrived in Fort Lauderdale, Florida on July 16, 2024 and provided U.S. Customs and Board Protection ("CBP") with a copy of her I-94 form documenting her lawful entry under the HHP program with an "admit until" date of June 12, 2025.[3]  ECF No. 8 at PageID#: 176.  E.V. suffers from a serious and painful umbilical hernia.  ECF No. ECF No. 8 at PageID#: 174.

---

[2] As set forth in the Memorandum of Opinion and Order granting the TRO (ECF No. 15), DHS previously established humanitarian parole programs for nationals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV Parole Programs").  See Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507 (Oct. 19, 2022); Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266 (Jan. 9, 2023); Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243 (Jan. 9, 2023); Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255 (Jan. 9, 2023).  Both E.V. and M.F.E. availed themselves of the procedures set forth in the HHP program and were granted parole status in advance arriving at a U.S. port of entry in 2024.  See Coalition for Humane Immigrant Rights v. Noem, No. 1:25-cv-872, 2025 WL 2192986, at *8 (D.D.C. Aug. 1, 2025) ("Each notice created a process under which noncitizens, along with a U.S.-based supporter, could apply in advance to travel to a U.S. port of entry.").  The CHNV Parole Programs were eliminated by DHS in March 2025, well after Petitioners had been granted parole, arrived at a port of entry, and entered the country.  See Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025).

[3] "The 'Admit Until Date' is the date that a traveler's immigration status expires in the U.S."  U.S. Customs and Border Protection, "I-94 Expiration Dates," CBP Publication No. 0326-0715.

(4:25CV2069)

Similarly, Petitioner M.F.E. fled Haiti after being robbed at gunpoint by armed bandits. ECF No. 8 at PageID#: 177.  M.F.E. claims that if she returns to Haiti, she fears the armed bandits will kill her, citing to reports of criminal actors shooting people without provocation and robbing victims.  ECF No. 8 at PageID#: 178.  M.F.E. arrived at a U.S. port of entry on May 12, 2024 with her I-94 form documenting her lawful entry under the HHP program with an "admit until" date of June 12, 2025.  ECF No. 8 at PageID#: 178.  M.F.E. is 70 years old with poor eyesight.  ECF No. 8 at PageID#: 174.

Recently, on July 29, 2025, E.V. and M.F.E. were driving through Ohio when their vehicle broke down.  Shortly thereafter, ICE agents arrested the women and detained them in the Mahoning County Jail.  ECF No. 1 at PageID #: 2, ¶ 3.  Both Petitioners were notified that they were being placed in expedited removal proceedings, rather than regular removal proceedings.[4] ECF No. 8 at PageID#: 172.

On August 18, 2025, E.V. underwent a credible fear interview with an immigration officer, who made a negative determination on August 29, 2025.  ECF No. 8 at PageID#: 176. An IJ reviewed and affirmed the immigration officer's negative determination.  ECF No. 8 at PageID#: 176.  E.V. moved to reopen her credible fear proceedings on September 17, 2025, asserting that she had been afraid to speak up during her interview.  ECF No. 8 at PageID#: 176–77.  The IJ denied the motion for lack of jurisdiction.  ECF No. 8 at PageID#: 177.

---

[4] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") establishes two mechanisms by which noncitizens seeking admission into the United States may be subject to removal: (1) regular removal proceedings commonly referred to as "Section 240" or "Section 1229a" proceedings; and (2) expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1).  *See* IIRIRA, Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996).

(4:25CV2069)

M.F.E. underwent a credible fear interview on September 5, 2025, which also resulted in a negative determination.  ECF No. 8 at PageID#: 178.  She requested review by an IJ, who affirmed the negative determination on October 2, 2025.  ECF No. 12-12.

**B.  Procedural Background**

*1.  Petitioners' Motion for a Temporary Restraining Order*

Petitioners filed a Motion for a TRO, raising four issues: (1) Respondents violated the Immigration and Nationality Act ("INA") by placing Petitioners in expedited removal proceedings under 8 U.S.C. § 1225(b)(1); (2) Respondents violated the nationwide injunction issued by the District of Columbia District Court in *Coalition for Humane Immigrant Rights v. Noem*, No. 1:25-cv-872, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) *appeal pending* 25-5289 (D.C. Cir. Aug. 11, 2025) [hereinafter, *Coalition*]; (3) Respondents violated Petitioners' Fifth Amendment due process rights by placing them in expedited removal proceedings; and (4) Petitioners will suffer irreparable harm absent a restraining order.  ECF No. 8.

The Court granted the TRO, and Respondents were: (1) enjoined from removing Petitioners from the jurisdiction of the Northern District of Ohio pending further Order from the Court; (2) ordered to process Petitioners under regular removal proceedings pursuant to § 1229a; (3) ordered to provide E.V. with immediate medical evaluation and treatment for her umbilical hernia; and (4) ordered to immediately provide M.F.E. with the glasses she possessed when she was seized or, in the alternative, with an eye examination and appropriate eyeglasses.  ECF No. 15 at PageID ##: 358–59.

The Court concurred with the decision in *Coalition* holding that paroled noncitizens, regardless of whether their parole status was active, expired, or revoked, cannot be subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1) and that by applying such

4

(4:25CV2069)

proceedings to Petitioners, Respondents acted *ultra vires* of their statutory and regulatory authority.  ECF No. 15 at PageID #: 346.  The Court further determined that Petitioners satisfied the four-factor test for a TRO and found that test is the same as that used to determine a preliminary injunction.  ECF No. 15.  *See Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (Gwin, J.) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)).

After determining that it had jurisdiction to address the lawfulness of Petitioners' detention, the Court determined that Petitioners were likely to succeed on the merits of their habeas claims if the Government acted *ultra vires* in shifting Petitioners from parolee-status to expedited removal-status.  ECF No. 15 at PageID ##: 345–46, 355–56.  As held in *Make the Road*, noncitizens paroled in the United States have a constitutional liberty interest in remaining and expedited removal proceedings do not provide sufficient due process to protect those interests.  *Make the Road New York v. Noem*, 25-cv-190, 2025 WL 2494908, at *10–12 (D.D.C. Aug. 29, 2025).  Accordingly, the Court found that expedited removal proceedings did not provide adequate due process to Petitioners.  ECF No. 15 at PageID #: 345–46.

Petitioners satisfied the irreparable harm factor because constitutional violations, no matter how temporary, are sufficient to satisfy this prong.  ECF No. 15 at PageID #: 356–57 (citing *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) (citing *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F. Supp. 3d. 948, 960 (S.D. Ohio 2015)).  Finally, the Court found that the balance of the equities weighed in Petitioners' favor because the

(4:25CV2069)

public has an interest in ensuring agency actions comport with statutory and regulatory guardrails.  ECF No. 15 at PageID #: 357–58 (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

    2.  *Respondents' Compliance with the TRO*

    Following the Court's issuance of the TRO, Respondents issued a Notice to Appear[5] to both Petitioners E.V. and M.F.E. on October 21, 2025 and October 23, 2025, respectively.  ECF No. 20-1; ECF No. 20-2.  M.F.E. reportedly refused to sign the Notice to Appear.  ECF No. 20-2.  During the Telephonic Preliminary Injunction Hearing, conducted on October 30, 2025, Petitioners' counsel stated that he had not been notified about M.F.E.'s Notice to Appear being filed or a master calendar hearing[6] being scheduled.  Min. of Procs. [non-document] Telephonic Preliminary Inj. Hr'g (Oct. 30, 2025).  Petitioner E.V.'s master calendar hearing was held on October 23, 2025, and the matter was continued until October 30, 2025, so that she could file her applications for relief with the Cleveland Immigration Court.  ECF No. 20-1.  Petitioner M.F.E.'s master calendar hearing was also scheduled for October 30, 2025.  ECF No. 20-2.

    During the telephonic hearings conducted in this case, Respondents intimated that both E.V. and M.F.E. have received some medical care pursuant to the Court's Order.  *See* ECF No. 15; Min. of Procs. [non-document] Telephonic TRO Hr'g (Oct. 14, 2025); Min. of Procs. [non-

---

    [5] A Notice to Appear serves as the charging document for removal proceedings. Once filed, the noncitizen's removal case is opened, an immigration judge is assigned, and a master calendar hearing is scheduled.  Dep't of Homeland Sec., "Self-Help Guide: Do You Have a Form Called a Notice to Appear ("NTA")?" DEP'T OF JUSTICE EXECUTVE OFFICE FOR IMMIGRATION REVIEW (Jan. 2022).
    [6] The master calendar hearing serves as pre-trial hearing for immigration judges to identify issues, set filing cutoffs and briefing schedules, and determine whether a case is appropriate for summary disposition.  Dep't of Justice, EOIR Handbook – IJ Benchbook, 1.  If a case is not disposed of at the master calendar hearing, it is transferred to the individual calendar hearing for merits hearing and oral decision.  *Id*.

(4:25CV2069)

document] Telephonic Preliminary Inj. Hr'g (Oct. 30, 2025).  Petitioners asserted, upon

information and belief, that such medical attention had not occurred.  ECF No. 23 at PageID #:

398.  In particular, M.F.E. had not received her glasses and, as a result, refused to sign her Notice

to Appear documents.  *See* ECF No. 20-2.  Respondents requested Petitioners submit appropriate

medical release forms, enabling Respondents to review what medical care has been provided and

next steps for both Petitioners.  The Court urged counsel to execute that plan.

## II.  STANDARD OF REVIEW

A preliminary injunction seeks to maintain the status quo pending a final hearing

regarding the parties' rights.  *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir.

2016).  Whether to grant such relief is a matter within the discretion of the district court.  *See*

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir.

2007).

Fed. R. Civ. P. 65 requires the Court to balance four factors when determining whether a

preliminary injunction should issue.  The factors are: (1) likelihood of success on the merits; (2)

irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed

injunction; and (4) the broader public interest.  *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867

F.3d 616, 622 (6th Cir. 2017).  These four considerations are "factors to be balanced, not

prerequisites that must be met."  *Certified Restoration*, 511 F.3d at 542 (quoting *Jones v. City of

Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other grounds by Anderson v. City of

Blue Ash*, 798 F.3d 338 (6th Cir. 2015)).  No single factor is determinative except that "a finding

that there is simply no likelihood of success on the merits is usually fatal."  *Miles v. Michigan

Dept. of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Gonzales

v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)).

7

(4:25CV2069)

"[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) (quoting *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015)).  "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Curran v. Fronabarger*, No. 23-6015, 2024 WL 4805017, at *2 (6th Cir. Aug. 27, 2024) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

"The burden of proving that the circumstances clearly demand such an extraordinary remedy is a heavy one since the party seeking the injunction must establish its case by clear and convincing evidence." *Hartman*, 613 F.Supp.3d at 1022 (internal quotation marks omitted) (citing *Overstreet*, 305 F.3d at 573; *Honeywell, Inc. v. Brewer-Garrett Co.*, No. 97-3673, 1998 WL 152951 (6th Cir. March 23, 1998)).  A preliminary injunction cannot be issued unless these very stringent requirements are met.  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### III.    DISCUSSION

There are two issues remaining in this case.  First, whether Respondents violated the Immigration and Nationality Act ("INA") and the nationwide stay issued in *Coalition* by applying expedited removal proceedings to Petitioners.  Second, whether Petitioners' detention during the pendency of their removal proceedings—under either expedited or Section 240 processes—is mandatory and whether Petitioners are entitled to a bond hearing.

### A.  Jurisdiction

Respondents renew their jurisdictional challenge, claiming the Court lacks jurisdiction under 8 U.S.C. §§ 1252(a)(2)(A), (b)(9), and (g).  Although Respondents are correct that the INA

8

(4:25CV2069)

limits district courts' jurisdiction in immigration matters, *see Jennings*, 583 U.S. at 292–96, such

limits are inapplicable in the present case.

    *1.  Section 1252(g)*

Respondents argue that § 1252(g) strips the Court of jurisdiction over any challenge

regarding the decision to commence expedited removal proceedings.  The statute reads:

> Except as provided in this section and notwithstanding any other
> provision of law (statutory or nonstatutory), including section 2241
> of Title 28, or any other habeas corpus provision, and sections 1361
> and 1651 of such title, no court shall have jurisdiction to hear any
> cause or claim by or on behalf of any alien arising from the decision
> or action by the Attorney General to *commence* proceedings,
> *adjudicate* cases, or *execute* removal orders against any alien under
> this chapter.

8 U.S.C. § 1252(g) (emphasis added).

Respondents misunderstand § 1252(g).  It does not bar judicial review over Petitioners

constitutional due process claims or allegations that Respondents violated the INA and its

implementing regulations.  Numerous courts agree.  *See Munoz Materano v. Arteta*, No. 25 Civ.

6137, 2025 WL 2630826, at *10 (S.D.N.Y Sept. 12, 2025); *Patel v. Tindall*, No. 3:25-cv-373,

2025 WL 2823607, at * 2 (W.D. Ky. Oct. 3, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-1101, 2025

WL 2675785, at *9 (E.D. Cal. Sept. 18, 2025).  The Supreme Court has "rejected as implausible"

any claim that § 1252(g) bars judicial review over "all claims arising from deportation

proceedings."  *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020).

Rather, the Supreme Court holds that § 1252(g) applies to the three categories enumerated

therein, that is, the commencement, adjudication, and execution of removal orders.  *Reno v. Am.-

Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).  Claims that do not seek "review of

an order of removal, the decision to seek removal, or the process by which removability will be

determined" are not barred by § 1252(g).  *Regents of Univ. of Cal.*, 591 U.S. at 19.

9

(4:25CV2069)

Petitioners are not challenging a removal order, or the Department of Homeland Security's ("DHS") discretionary authority to commence or adjudicate removal proceedings against them.  Instead, they claim that because Congress intended to exclude immigrants like themselves—parolees—from expedited removal proceedings, Respondents have violated the INA and *Coalition*'s nationwide stay.  ECF No. 23 at PageID ##: 395-96.  Their claims do not fall within the three enumerated categories set forth in § 1252(g).

Section 1252(g) also does not bar the Court's jurisdiction to consider Petitioners' claims concerning their continued detention without a bond hearing.  Consistent with the Supreme Court's interpretation of § 1252(g), the Sixth Circuit distinguishes detention-based challenges from removal-based challenges.  *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (A "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims.").  Accordingly, detention-based challenges—as in the case at bar—which do not require the Court to address the merits of a removal order are not barred by § 1252(g).  *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010).

Because none of Petitioners' challenges fall within the three categories enumerated in § 1252(g), or require the Court to address the merits of Petitioners' removal proceedings, the Court has jurisdiction to consider Petitioners' Motion for Preliminary Injunction and habeas petition.

2.  *Section 1252(a)(2)(A)*

Respondents next contend that § 1252(a)(2)(A) "strips courts of jurisdiction to review claims relating to the expedited removal statute except as provided in § 1252(e)."  ECF No. 20 at

10

(4:25CV2069)

PageID#: 370 (citing *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 736 (N.D. Tex. 2020)). This argument fails for the same reasons Respondents' § 1252(g) argument failed.

Federal courts are not precluded from reviewing "how" Respondents exercise their discretion and determining whether such exercise is violative of the Constitution or federal law. *Munoz Materano*, 2025 WL 2630826 at *9 (citing *Torres-Jurado v. Biden*, No. 19 Civ. 3595, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023)).  Several circuits have held that agency compliance with established regulatory procedures is not within the Attorney General's (*i.e.*, DHS's) discretion and, therefore, not shielded from judicial review by § 1252(a)(2).  *See e.g.*, *Mantena v. Johnson*, 809 F.3d 721, 728-29 (2d. Cir. 2015); *Musunuru v. Lynch*, 831 F.3d 880, 887-88 (7th Cir. 2016).  *See also*, *Kurapati v. U.S. Bureau of Citizenship and Immigration Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) ("Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations."); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) (internal citations omitted) ("[E]ven if § 1252(a)(2)(B) otherwise bars review of a discretionary act, we have jurisdiction to review a 'predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief.'")

Respondents' reliance on *Rodrigues* is misplaced because, in that case, the petitioner specifically contested DHS's asylum determination and expedited removal order.  *Rodrigues*, 435 F. Supp. 3d at 735.  The court determined that its habeas jurisdiction under §§ 1252(a)(5) and 1252(e) was limited and excluded judicial review of such discretionary decisions.  *Id.* at 735-36.  The present case is distinguishable because, as explained above, Petitioners' challenges

(4:25CV2069)

present legal questions that do not concern DHS's discretionary decision-making (*i.e.*, an expedited removal order) and, therefore, fall outside the scope of § 1252(a)(2)(A).

       *3. Section 1252(b)(9)*

       Respondents raise one final jurisdictional challenge under § 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Numerous district courts have rejected similar arguments asserting that § 1252(b)(9) bars review concerning legality of detention under §§ 1225 and 1226. *See, e.g., Ochoa Ochoa v. Noem*, No. 25-CV-10865, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025) (citing *Jennings*, 583 U.S. at 294–95).

       The question of whether statutory provisions require detention without bond hearings do not "arise from" actions taken to remove noncitizens. *Id.* (citing *Jennings*, 583 U.S. at 292–93). *See Patel*, 2025 WL 2823607 at *2 (citing *Reg. of Univ. of Cal.*, 591 U.S. at 19) (§ 1252(b)(9) does not bar claims that are not challenging or seeking review of DHS's initiation, adjudication, or execution of a removal order). Similarly, and as explained above, courts are not stripped of jurisdiction to determine whether agencies comply with federal law and their own regulations. *Mantena*, 809 F.3d at 728–29; *Musunuru*, 831 F.3d at 887–88; *Kurapati*, 775 F.3d at 1262; *Abdelwahab*, 578 F.3d at 821. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that the extent of the Attorney General's authority under the post-removal-period detention statute was not a matter of discretion).

12

(4:25CV2069)

Despite Respondents' contentions, the Court has jurisdiction to consider Petitioners' claims concerning: (1) Respondents' alleged violations of the INA and the nationwide stay; and (2) Petitioners' detention without a bond hearing during the pendency of their removal proceedings.

## B. Expedited Removal Proceedings

For a preliminary injunction to issue, Petitioners must demonstrate, by clear and convincing evidence, a likelihood of success on the merits of their claims regarding expedited removal. Petitioners claim that, as parolees (regardless of whether their parole has expired or was revoked), they are outside the category of individuals to which Congress intended for expedited removal proceedings to apply and that subjecting them to such removal procedures violates due process. ECF No. 23 at PageID ##: 397.

Relying on 8 U.S.C. § 1225(b)(1)(A)(i) and its implementing regulation, 8 C.F.R. § 235.3(b)(1), Respondents insist that Petitioners retained their "arriving alien" status, despite being parolees, and, therefore, were lawfully subject to expedited removal. ECF No. 20 at PageID #: 373–74. The *Coalition* court addressed this argument:

> [T]he parole regulation Defendants cite is easily read as providing not, as Defendants insist, for either expedited removal or section 240 removal for noncitizens whose parole is terminated. Instead, it appears to provide for *either* inspection under section 236 (which can lead to either expedited or regular removal proceedings) *or*, if the parolee does not require any "further inspection," to section 240 proceedings.

*Coalition*, 2025 WL 2192986, at *26 (emphasis added). As articulated in its Memorandum of Opinion and Order (ECF No. 15), the Court concurs with the statutory analysis in *Coalition*. Accordingly, the time to subject Petitioners to expedited removal proceedings was upon their arrival at a port of entry, not more than a year later.

13

(4:25CV2069)

Moreover, Respondents' insistence that the D.C. Circuit stayed the nationwide stay pending appeal in *Coalition* is incorrect.  ECF No. 20 at PageID #: 373.  The D.C. Circuit's order reads:

> Appellants [*i.e.*, the Government] have not satisfied the stringent requirements for a stay pending appeal. . . . Specifically, Appellants assert that the district court's order will cause the government irreparable harm *if* the order precludes the government from applying expedited removal to parolees, notwithstanding 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i).  *But appellants make no assertion that the district court's order does so.*

*Coalition for Humane Immigrant Rights v. Noem*, No. 25-5289, 2025 WL 2649100, at *1 (D.C.C. Sept. 12, 2025) (emphasis added).  In short, because nothing in *Coalition* prohibits DHS from applying expedited removal proceedings to parolees presenting themselves for initial inspection at a port of entry, the Government failed to demonstrate irreparable harm.  *Id*.  The D.C. Circuit dissolved its August 18, 2025 partial administrative stay of the district court's stay.  *Id*.  *See Coalition for Humane Immigrant Rights v. Noem*, No. 25-5289, Order (D.C.C. Aug. 18, 2025).  Nothing in the D.C. Circuit's order dictates that *Coalition* is not in effect or does not apply to Petitioners.  They were paroled under the HHP program and may only be subject to Section 240 removal proceedings, even if their parole was revoked or expired.  ECF No. 23 at PageID ##: 397.  Therefore, Petitioners are likely to succeed on the merits of their claim concerning expedited removal.

As to the other factors, Petitioners due process claims allege that they were unlawfully subjected to expedited removal proceedings which does not provide sufficient procedural safeguards to prevent mistaken or unjustified deprivation of liberty.  *See Make the Road*, 2025 WL 2494908 at * 14-15.  Constitutional violations constitute irreparable harm, no matter their duration.  *Hartman*, 613 F. Supp. 3d at 1025.  Moreover, both Petitioners claim that returning to

14

(4:25CV2069)

Haiti could subject them to violence and persecution.  ECF No. 8 at PageID #: 185.  Returning

individuals to a place where they will be persecuted or tortured constitutes irreparable harm.[7]

See *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733–34 (D.C. Cir. 2022).

Finally, the balance of the equities weighs in Petitioners' favor because "the public has an

interest in preventing noncitizens from being wrongfully removed, particularly to countries

where they are likely to face substantial harm." *Make the Road*, 2025 WL 2494908 at *21

(citing *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 222 (D.D.C. 2020)).  In addition, there is no

public interest in perpetuating unlawful executive action. *See League of Women Voters of the*

*United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).  Because DHS's actions (*i.e.*, applying

expedited removal proceedings to parolees) are *ultra vires* and in violation of the nationwide

stay, Petitioners satisfy this factor.

The Court grants Petitioners' motion for preliminary injunction.  Therefore, Respondents

are enjoined from subjecting them to expedited removal proceeding.

**C.  Lawful Detention**

The final issue in this case concerns Petitioners' ongoing detention pending regular

removal proceedings and the issue of a bond hearing.  For the reasons stated herein, Petitioners'

request for habeas relief is granted in part.

---

[7] Although both Petitioners participated in a credible fear interview, (*see* ECF No. 8) it is questionable whether such an inquiry conducted under the expedited removal procedures was sufficient to satisfy the constitutional due process requirements. *Make the Road*, 2025 WL 2494908 at *15 ("Entrusting the entirety of [the credible fear] decision making process to the executive branch official prosecuting the case leads, unsurprisingly to problems.").

(4:25CV2069)

### 1. *Statutory framework for detention*

There are two statutes governing detention of noncitizens during removal proceedings: 8 U.S.C. §§ 1225 and 1226. Section 1225 applies to "applicants for admission," defined as any "alien in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Specifically, "Section 1225(b)(1) [noncitizens] are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) [noncitizens] are in turn detained" for a proceeding under 8 U.S.C. § 1229a. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (brackets added). *See Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky., Sept. 19, 2025) (recognizing detention under § 1225 is mandatory except when the noncitizen is "paroled for urgent humanitarian reasons or significant public benefit.").

Conversely, § 1226 serves as a catchall applicable to noncitizens already in the country, pending the outcome of removal proceedings. *Jennings*, 583 U.S. at 288. The statute provides the Attorney General (who has delegated her authority to the DHS Secretary) with discretion to arrest and detain noncitizens, save for those individuals that fall under the statutory exceptions set forth in § 1226(c). *Id.* at 288–89. Detention of noncitizens subject to removal proceedings under § 1226 is discretionary and, therefore, such individuals are entitled to bond hearings. *Id.*

Petitioners do not contest they are subject to removal proceedings under § 1225(b)(2) and § 1229a, nor that § 1225(b) requires detention. ECF No. 1. Instead, Petitioners argue that the Due Process Clause under the Fifth Amendment protects their liberty interests, namely, remaining free from custody during their removal proceedings. ECF No. 1. Respondents insist that the statute requires Petitioners remain in custody without a bond hearing. ECF No. 20 at PageID #: 376.

(4:25CV2069)

Several district courts have considered, and rejected, arguments similar to Respondents'. In *Espinoza v. Kaiser*, for example, six petitioners entered the United States seeking asylum[8] and were released on their own recognizance.  2025 WL 2581185, at *1–3 (E.D. Cal. Sept. 5, 2025). In 2025, ICE re-detained the petitioners and initiated removal proceedings against them, claiming detention was mandatory under § 1225(b).  *Id*.  The court noted that, until recently, DHS interpreted § 1226(a) (which permits a bond hearing) "to be an available detention authority for noncitizens [ ] placed directly in full removal proceedings under Section 1229a." *Id*. at *10; *see* Immigration and Customs Enforcement, "Interim Guidance Regarding Detention Authority for Applicants for Admission," DEP'T OF HOMELAND SECURITY (July 8, 2025) ("Effective immediately, it is the position of DHS that [applicants for admission] are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.").  The court held that, even if the Government's new interpretation of mandatory detention under § 1225(b) were correct, it "fails to contend with the liberty interests created" by noncitizens released on parole "*prior to the manifestation of this interpretation.*"  *Id*. at *10. (emphasis in original).  The court explained that parolees develop due process liberty interests because they enjoy the same activities (*e.g.*, living at home, working, and social interactions) as those who have not been detained, relying on the "implicit promise" that if they comply with the parole conditions, they will remain free.  *Id*. at *9 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481–84 (1972)).

---

[8] Like the Petitioners in the present case, three of the petitioners in *Espinoza* entered the U.S. in 2024.  The length of time they lived in the country was irrelevant to the court's analysis concerning their constitutional due process claims.  *Espinoza*, 2025 WL 2581185 at *9–11.

(4:25CV2069)

Other district courts have also rejected Respondents' arguments regarding mandatory detention without a bond hearing. *See, e.g., Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at \*10 (W.D. Tex. Sept. 22, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-1204, 2025 WL 2430267, at \*8 (D. Or. Aug. 21, 2025); *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at \*12 (D. Ariz. Aug. 11, 2025) ("Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody they have a protected liberty interest in remaining out of custody."). One court noted:

> Were it true that "arriving noncitizens have *no* due process rights, it would mean that such individuals—including those living freely among us on parole—could "be subjected to punishment of hard labor without a judicial trial." *Clarveaux v. Searls*, 397 F. Supp. 3d 299, 316 (W.D.N.Y. 2019) (quoting *Zadvydas v. Davis*, 533 U.D. 678, 704 (2001) (Scalia, J., dissenting)). It would also mean that a noncitizen living here on parole could be taken into custody and beaten by local police without any violation of the Fourth Amendment. That cannot be the law.

*Mata Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at \*16 (W.D.N.Y. July 16, 2025) (emphasis in original). *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings . . . So, the detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case."); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (same).

As discussed above, Petitioners entered the country through the HHP program and have lived here for over a year. ECF No. 1. Consistent with *Espinoza* (and a growing consensus nationwide), the Court finds that Petitioners developed a protected liberty interest in remaining out of custody during their removal proceedings. Therefore, the Court must assess such claims using the three-part test prescribed in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

(4:25CV2069)

### 2. *Application of* Thuraissigiam *holding*

Respondents claim that *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) confirms mandatory detention is constitutional and not violative of due process rights.  ECF No. 20 at PageID #: 376.  Respondents overstate *Thuraissigiam*'s reach.  To be sure, the Supreme Court held that noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'"  *Thuraissigiam*, 591 U.S. at 139 (internal citations omitted).  In addition, noncitizens seeking entry into the United States and who have not effected an entry are only entitled to the procedures authorized by Congress.  *Id.* at 138–39.  *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (same).  Respondents' reliance is misplaced because such cases concern due process challenges to deportability—that is, removal proceedings and orders—not detention.  *See Lopez-Arevelo*, 2025 WL 2691828, at *8 (analyzing *Thuraissigiam* as applying to challenges to deportation orders, not detention).  For example, the petitioner in *Thuraissigiam* filed a habeas application challenging both DHS's asylum denial and his order of removal, not his detention during the removal proceedings.  *Thuraissigiam*, 591 U.S. at 114–15.

The case at bar is distinguishable from *Thuraissigiam* for two reasons.  First, Petitioners' due process claims in this case relate to their detention without a bond hearing, not their deportability.  Second, and as explained above, Petitioners developed a liberty interest while living in the country under the HHP program (ECF No. 1), whereas the *Thuraissigiam* petitioner

(4:25CV2069)

had not developed such interests because he was detained shortly after crossing the border and was never released from custody. *See Thuraissigiam*, 591 U.S. at 114–15, 140.

Also of importance, the Supreme Court has not yet addressed the issue of constitutional due process claims concerning noncitizens' detention during removal proceedings. *See, e.g., Jennings*, 583 U.S. at 312 (declining to address the constitutional due process claims relating to detention because the lower courts did not address the merits of such claims). The Government conceded (in other cases) that "as applied constitutional challenges remain available" concerning noncitizens' detention during removal proceedings. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022) (recognizing the Government's concession but declining to address the merits of the respondent's constitutional due process claims for the first time.).

The Court concurs with the growing consensus of district courts across the country recognizing that as-applied due process challenges to detention without a bond hearing are not foreclosed by either *Thuraissigiam* or *Jennings*. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *7–10; *Hernandez-Ferndandez v. Lyons*, No. 5:25-cv-773, 2025 WL 2976923, at *8 n.2 (W.D. Tex. Oct. 21, 2025); *Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 WL 2941609, at *4 (S.D. Fla. Oct. 15, 2025); *Ochoa Ochoa*, 2025 WL 2938779 at *7 (N.D. Ill. Oct. 15, 2025); *see Escobar-Ruiz v. Raycraft*, No. 1:25-CV-1232, 2025 WL 3039255, at *6 (W.D. Mich. Oct. 31, 2025) (holding that noncitizens subject to removal proceedings under § 1226 are entitled to due process protections under the Fifth Amendment). Accordingly, Petitioners maintain their right to assert their Fifth Amendment due process claims challenging their detention.

　　　　　3. *The* Mathews *Analysis*

Turning to the merits, the Sixth Circuit holds that "the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of

(4:25CV2069)

immigration detention." *Escobar-Ruiz*, 2025 WL 3039255 at *6 (W.D. Mich. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)).  As such, the Court must consider three factors: (1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation of such interests; and (3) the government's interest, including fiscal and administrative burdens additional procedures may entail.  *Id.*; *Ballestros v. Noem*, No. 3:25-cv-594, 2025 WL 2880831, at *4 (W.D. Ky. Oct. 9, 2025).

        The first factor weighs in Petitioners' favor.  Freedom from detention is one of the "most elemental of liberty interests."  *Ballestros*, 2025 WL 2880831, at *4 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  As discussed above, Petitioners entered the United States in 2024 under the HHP program and, relying on the "implicit promise" that complying with the conditions of their parole would ensure their continued freedom from detention (*see Espinoza*, 2025 WL 2581185, at *9), enjoyed the same liberties as other non-detained individuals (*i.e.,* living, working, and socializing in the United States).  *See* Supra Section III.C.2.  It is not insignificant that Petitioners were granted parole *prior to entering* the United States, after which they expected to live outside of detention until their immigration status was ultimately determined.  ECF No. 1; *see* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243 (Jan. 9, 2023).  In arguing for mandatory detention, Respondents ignore the liberty interests Petitioners developed over the past year.  *See Espinoza*, 2025 WL 2581185 at *9–10.

        The conditions of confinement are also to be considered under the first factor.  *Escobar-Ruiz*, 2025 WL 3039255 at *6 (citing *Gunaydin v. Trump*, No. 25-CV-1151, 2025 WL 1459154, at *7 (D. Minn. May 21, 2025)).  Both Petitioners allege medical conditions that are exacerbated by their continued detention.  ECF No. 1.  E.V. continues to suffer from a painful umbilical hernia and lack of medical attention.  Min. of Procs. [non-document] Telephonic Preliminary Inj.

21

(4:25CV2069)

Hr'g (Oct. 30, 2025).  M.F.E. has not yet received her eyeglasses and is unable to read

government documents, affecting her ability to assist with her defense regarding removal

proceedings and her detention challenge.  Min. of Procs. [non-document] Telephonic Preliminary

Inj. Hr'g (Oct. 30, 2025).  While not documented, impaired vision can create other mental as

well as medical concerns.  Based on these facts, Petitioners possess a cognizable interest in their

freedom from detention.

The second factor also weighs in Petitioners' favor.  Recently, many district courts have

found that an individualized bond hearing ensures that immigration judges can assess whether

noncitizens pose a flight risk or a danger to the community, thereby mitigating the erroneous

deprivation of noncitizens' liberty interests.  *Escobar-Ruiz*, 2025 WL 3039255, at *7 (citing

*Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29,

2025)).  *See* *Ballestros*, 2025 WL 2880831 at *5; *Munoz Materano*, 2025 WL 2630826, at *13.

The same concerns are present in this case.

Concerning the final factor, Respondents offer no argument.  *See* Resp. Mot. Dismiss,

ECF No. 12; Resp. Opp. Br., ECF No. 20.  Still, the Court recognizes the Government's interest

in enforcing immigration policies, including ensuring that noncitizens appear at removal

proceedings.  *Escobar-Ruiz*, 2025 WL 3039255, at *7.  That does not, however, translate into an

interest in detaining Petitioners without a bond hearing.  *See* *Rosado*, 2025 WL 2337099, at *14

(concluding the Government failed to identify specific justifications outweighing the individual's

constitutionally protected liberty interests); *Lopez-Arevelo*, 2025 WL 2691828, at *12 (rejecting

the Government's argument regarding fiscal and administrative burdens associated with

providing bond hearings because such hearings have been routine for decades.).  This is

particularly true here.  Petitioners underwent an initial assessment when they each arrived at a

22

(4:25CV2069)

port of entry and were permitted to enter the country under the HHP program. ECF No. 1. *See, e.g., Hernandez-Ferndandez*, 2025 WL 2976923, at *9 (that petitioner was previously released on bond reflected the Government's determination that he was not a danger to the community or a flight risk). Respondents are squandering, rather than preserving resources by detaining Petitioners who were cleared to live outside of detention and, but for a broken-down vehicle, would still be free. Therefore, the third factor weighs in Petitioners' favor.

Because all three *Mathews* factors weigh in Petitioners' favor, their continued detention without an individualized assessment regarding their flight risk or danger to the community violates their due process rights under the Fifth Amendment.

### D. Scope of Relief

Having concluded that Petitioners' detention without a bond hearing violates their procedural due process rights, the Court must determine the appropriate remedy. Petitioners request their immediate release from custody or, in the alternative, a bond hearing. ECF No. 1. In lieu of immediate release from custody, most district courts addressing similar issues agree that the appropriate remedy is to require a bond hearing before an immigration judge. *See, e.g., Hernandez-Ferndandez*, 2025 WL 2976923, at *10–11; *Ochoa Ochoa*, 2025 WL 2938779 at *7 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2020)); *Lopez-Campos*, 2025 WL 2496379 at *10 (E.D. Mich. Aug. 29, 2025); *Roman v. Noem*, No. 2:25-cv-1684, 2025 WL 2710211, at *6 (D. Nev. Sept. 23, 2025). When the case concerns procedural due process violations, the appropriate remedy is to afford the proper procedure.

Many courts also place the burden on the Government to show by clear and convincing evidence that a noncitizen should remain in detention. *Hernandez-Ferndandez*, 2025 WL 2976923, at *11 (collecting cases). The reasoning for this burden shift is because the "alien's

23

(4:25CV2069)

potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *Id.*
*at \*10* (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir.
2020)).  Accordingly, Respondents shall afford Petitioners a bond hearing before an immigration
judge, during which, the Government must demonstrate by clear and convincing evidence that
Petitioners should remain in custody.  If Respondents continue to disclaim authority to conduct
such individualized assessments of Petitioners in accordance with this Order, then Petitioners
must be immediately released.

## IV.    CONCLUSION

Petitioners' Motion for Preliminary Injunction (ECF No. 8) is granted.

**It is hereby ordered** that:

1.  Respondents are enjoined from removing Petitioners from the jurisdiction of the
    Northern District of Ohio pending further Order of the Court;

2.  Respondent shall maintain Petitioners' removal proceedings under regular removal
    process pursuant to 8 U.S.C. § 1229a, not expedited removal proceedings, pending
    the conclusion of these review proceedings;

3.  Petitioners' counsel shall consult with and provide Respondents with appropriate
    medical release forms relating to the medical treatment thus far provided to E.V. and
    M.F.E.; and

4.  Respondents shall consult with Mahoning County to locate the contents of the vehicle
    in which Petitioners were riding when they were arrested and detained by ICE to
    locate M.F.E.'s eyeglasses or, in the alternative, provide M.F.E. with an eye
    examination and appropriate eyeglasses.

(4:25CV2069)

In addition, the Court grants, in part, the Petition for Writ of *Habeas Corpus* (ECF No. 1).

**It is hereby ordered** that:

5.  On or before November 14, 2025, Respondents shall either: (a) provide Petitioners with a bond hearing before an immigration judge, at which the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioners pose a flight risk and/or a danger to the community justifying their continued detention; or (b) release Petitioners from custody under reasonable conditions of supervision.

**It is further ordered** that:

6.  On or before 9:00 a.m. on November 17, 2025, Respondents shall notify the Court of whether Petitioners have had a bond hearing before an immigration judge or been released from custody in accordance with this Order.   If Petitioners have not been released from custody, Respondents shall inform the Court, in detail, of the reasons for their continued detention, including any reasoning of an immigration judge.


IT IS SO ORDERED.


November 7, 2025                                                 */s/ Benita Y. Pearson*

Date                                                                      Benita Y. Pearson
                                                                               United States District Judge